DISTRICT OF OREGON
F I L E D
November 17, 2025
Clerk, U.S. Bankruptcy Court

Below is an order of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| In re | Case No. _____ |
|---|---|
| | Amended |
| | **ORDER, DRAFTED ON:** _____, **RE: RELIEF FROM** [*check all that apply*] **DEBTOR STAY    CODEBTOR STAY** |
| | **CREDITOR:** _____ |
| Debtor | **CODEBTOR:** _____ |

The undersigned, _____, whose address, email address, phone number, and OSB#, if any, are:

presents this order based upon [*check all that apply*]:

720.90 (2/28/2025)                    Page 1 of 6

The complete stipulation of the parties listed at the end of this document.

The oral stipulation of the parties at the hearing held on _____.

The ruling of the court at the hearing held on _____.

Creditor certification that any default notice required by paragraph 5 of the order re: relief from stay entered on _____ was mailed, and that debtor failed to comply with the conditions of that order. The dates and amounts of missed cure payments and the date of creditor's notice of default are as follows:

Creditor certification that no response to the motion for relief from stay filed on _____ and served on _____ was filed within the response period plus 3 days.

**IT IS ORDERED** that, except as provided in paragraph 4 below, the stay existing pursuant to 11 U.S.C. § 362(a) remains in effect as to the property described below (hereinafter "the property"):

Personal property described as [*for example, "2001 Ford Taurus"*]:

Real property located at [*enter street address*]:

Exhibit A attached hereto is the legal description of the property [*attaching a legal description is optional unless in rem relief is granted*].

**IT IS FURTHER ORDERED** that the stay is subject to the conditions marked below:

1. **Regular Payment Requirements.**

    a. Debtor must deliver regular monthly payments in the amount of $_____ commencing _____ to creditor at the following address:

    b.  The chapter 13 trustee must immediately pay and disburse to creditor the amount of $_____ per month from funds paid to the trustee by debtor, and continue each month until the plan is confirmed, at which time the plan payment terms will control. Payments made by the trustee under this order are deemed to be payments under the plan for purposes of the trustee's collection of percentage fees.

    c.  Debtor must pay to the trustee any and all payments required to be paid under the terms of the chapter 13 plan.

2. **Cure Payment Requirements.** Debtor must cure the post-petition default of $_____ consisting of [*for example, $_____ in payments and $_____ in late charges for April - June 2022*]:

    as follows:

    a.  In equal monthly installments of $_____ each, commencing _____ and continuing thereafter through and including _____.

    b.  By paying the sum of $_____ on or before _____, and the sum of $_____ on or before _____.

    c.  Other [*describe*]:

3. **Insurance Requirements.** Debtor must maintain insurance on the property at all times as required by the security agreement, naming _____ as the loss payee.

    On or before _____ debtor must provide counsel for creditor with proof of insurance.

4. **Stay Relief and Codebtor Stay Relief without Cure Opportunity.**

    a.  Upon default in the conditions in paragraphs _____ creditor may file and serve a certificate of non-compliance specifying the default, together with a proposed order terminating the stay to allow creditor to foreclose on, and obtain possession of, the property to the extent permitted by applicable nonbankruptcy law, which the court may grant without further notice or hearing.

b.  The stay is terminated to allow creditor to foreclose on, and obtain possession of, the property to the extent permitted by applicable nonbankruptcy law, provided that a foreclosure sale shall not occur prior to _____.

c.  Creditor is granted relief from stay effective _____ to foreclose on, and obtain possession of, the property, to the extent permitted by applicable nonbankruptcy law.

d.  Creditor is granted relief from stay to foreclose on, and obtain possession of, the property, to the extent permitted by applicable nonbankruptcy law.

e.  If a creditor with a senior lien on the property is granted relief from stay, creditor may file and serve a certificate identifying the senior lienholder and a proposed order terminating the stay, which the court may grant without further notice or hearing.

f.  Creditor is granted relief from stay to:

g.  Creditor is granted in rem relief from stay with respect to the real property described above and in Exhibit A. This order shall be binding in any other case filed under 11 U.S.C. purporting to affect such real property filed not later than two (2) years after the date of the entry of this order unless the bankruptcy court in the subsequent case grants relief from this order. Any governmental unit that accepts notices of interests or liens in real property must accept a certified copy of this order for indexing and recording.

h.  Creditor is granted relief from the codebtor stay, as it applies to the codebtor named in the caption above, to enforce the terms of the contract and collect the deficiency balance.

i.  [*Check for chapters 12 and 13 only*] All disbursements by the trustee to the creditor pursuant to the plan on account of creditor's secured claim (claim no. _____) against the property must cease. Debtor and creditor have agreed to this modification of the plan, and formal notice of this plan modification is not required because there is no negative effect on any nonconsenting creditor; the undersigned certifies receipt of written confirmation that debtor has no objection to this paragraph.

5. **Stay Relief with Cure Opportunity.** Upon default in the checked conditions in paragraphs 1 - 3, creditor must ☐ serve on debtor and ☐ e-mail to attorney for debtor written notice of default giving debtor _____ calendar days after the mailing of the notice to cure the default. If debtor fails to timely cure the default, then creditor may submit a proposed order terminating the stay, which the court may grant without further notice or hearing.

   a. The notice of default may require that debtor make any payment that becomes due between the date the notice of default is mailed and before the cure deadline.

   b. The notice of default may require debtor to pay $_____ for the fees and costs of sending the notice.

   c. Only _____ notices of default and opportunity to cure are required per year [*calculated from date of entry of this order*], ☐ during the remainder of this case, or ☐ [*describe*]:

6. **Amended Proof of Claim.** Creditor must file an amended proof of claim to recover all accrued post-petition attorney fees and costs and [*describe*]:

7. **Miscellaneous Provisions.**

   a. If creditor is granted relief from stay, the 14-day stay provided by FRBP 4001(a) is waived.

   b. Any notice that creditor's counsel must give to debtor or codebtor, or attorney for debtor or codebtor, pursuant to this order will not be construed as a communication under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692.

8. A hearing on the motion for relief from stay, at which witnesses may not testify, will be held as follows:

   **Date:**_____    **Time:** _____

   **Location**:

   Courtroom #_____, _____

   Video Hearing. To connect, see www.orb.uscourts.gov/video-hearings.

Telephone Hearing [*See* LBF 888, *Telephone Hearing Requirements*.]

**Call-In Number:** (855) 244-8681

**Access Code:**   2319 199 8338 for Judge David W. Hercher (dwh)

2311 562 9438 for Judge Peter C. McKittrick (pcm)

2303 266 1826 for Judge Teresa H. Pearson (thp)

2318 130 5070 for Judge Thomas M. Renn (tmr)

Other _____

9.   Other:

### 

Presented and certified by:

_____

It is so stipulated.

Creditor's Attorney:

_____
Name: _____
OSB#: _____

Debtor's Attorney:

_____
Name: _____
OSB#: _____

No objection to order by case trustee.

By: _____

Codebtor's Attorney:

_____
Name: _____
OSB#: _____

DocuSign Envelope ID: 38379C63-C834-4291-AF3C-D54BACEF91CD

**SOLE ORIGINAL**

## DEXT CAPITAL — EQUIPMENT FINANCE AGREEMENT

Contract # ▮▮▮▮▮8-001    dated 5/25/2022

### BORROWER INFORMATION

| | |
|---|---|
| **BORROWER NAME:** METATRON HEALTH LLC | **ADDRESS:** 6464 Southwest Borland Road STE 3 Tualatin OR 97062 |
| **EMAIL:** | |
| **PHONE:** 503-852-9680    **STATE OF INCORPORATION:** OR | **ENTITY TYPE:** LLC |

### DESCRIPTION OF FINANCED EQUIPMENT and TERMS OF AGREEMENT

| TERM | PAYMENT FREQUENCY | AMOUNT OF EACH PAYMENT | DOCUMENTATION FEE | EQUIPMENT COST |
|---|---|---|---|---|
| 51 Months | Monthly | 3 @ $99, 48 @ $6706.95 (plus applicable Taxes & Insurance) | 695.00 | 249999.00 |

The "First Payment" will be due on the date we specify which will be no later than one month following the Commencement Date. We will charge you a portion of one Monthly Payment for the period of time from the Commencement Date until the First Payment ("Interim Payment"). The Interim Payment shall be calculated as 1/30th of your Monthly Payment for each day between the Commencement Date and the First Payment Date and is due as invoiced.

| | | |
|---|---|---|
| Amount you authorize us to disburse to Payee | **PAYEE:** Sciton Inc | **AMOUNT:** 249999.00 |
| **EQUIPMENT:** Joule | | **EQUIPMENT LOCATION:** 6464 Southwest Borland Road STE 3 Tualatin OR 97062 |

This Equipment Finance Agreement (this "Agreement") has been written in "Plain English". When we use the words "you" or "your" we mean you, the Borrower, as shown above. When we use the words "we", "us" and "our" in this Agreement, we mean DEXT CAPITAL, LLC the Lender. DO NOT SIGN IF YOU DO NOT UNDERSTAND YOUR OBLIGATIONS OR LIABILITIES UNDER THIS AGREEMENT. The undersigned person warrants on behalf of the Borrower that he/she is duly authorized to sign and bind the Borrower to the terms of this Agreement and other documents related to this Agreement, and the Borrower is duly incorporated or organized, validly existing and in good standing under the laws of the State where incorporated or organized.

1. You want us to finance your purchase of the above equipment ("Equipment") from the Supplier at the equipment cost ("Equipment Cost") as evidenced by the Supplier's invoice. The "Commencement Date" will be the date of initial funding to the Supplier(s) by the Lessor, or a later date determined by the Lessor. The Term commences on the Commencement Date and will continue for the number of months set forth above unless cancelled, terminated or extended as provided herein. You will pay all installation and delivery costs, unless such costs are included in the Equipment Cost. You will pay us 3 @ $99, 48 @ $6706.95            (a "Payment"), Monthly. YOUR OBLIGATION TO PAY THE PAYMENTS AND OTHER AMOUNTS DUE UNDER THIS AGREEMENT IS ABSOLUTE AND UNCONDITIONAL AND WILL CONTINUE IN FULL FORCE AND EFFECT REGARDLESS OF ANY DEFECT IN THE EQUIPMENT, ANY INABILITY TO USE THE EQUIPMENT OR ANY OTHER CIRCUMSTANCE WHATSOEVER AND IS NOT SUBJECT TO CANCELLATION, REDUCTION, SETOFF OR COUNTERCLAIM. If we do not receive your Payment or any other amounts owed within 7 days of the due date, there will be a late fee equal to the fifteen percent (15%) of the late amount, provided that no late charge will exceed the maximum amount permitted by applicable law. You will pay us a documentation fee and we may require an Advance Payment or security deposit. The security deposit will not bear interest and we may commingle it with other funds. We may apply the security deposit to any amount owed to us, and if we do you will restore the security deposit to its original amount. You may request the return of the security deposit after your obligations under this Agreement have been met in full. The Payments will remain fixed if the fully executed agreement is received by us and commences within ten (10) business days after preparation; thereafter, at our sole discretion, the Monthly Payments herein may change in the event that on the date of final disbursement, there has been change in the like term interest rate swaps. You hereby authorize us to revise the Monthly Payments and You agree to pay such revised Monthly Payments. You further authorize us to adjust the Payment if the actual Equipment cost varies from the amount used to calculate the Payment and amend any patent errors in the Agreement and to set, as of this date of the final disbursement of the Equipment Cost, the number and amount of the Monthly Payments due under the Agreement and the commencement date thereof. This Agreement may be executed in counterparts all of which will constitute one agreement. The exchange of signed copies by facsimile or electronic transmission will constitute effective execution and may be used in lieu of manually signed documents and qualify as authentic original signatures for purposes of enforcement thereof, including all matters of evidence and the "best evidence" rule. For purposes of perfection of a security interest in chattel paper under the UCC, only the counterpart of this Agreement that bears our manually applied signature and is marked "Sole Original" by us will constitute the sole original counterpart of the original chattel paper for purposes of possession. No security interest in this Agreement can be perfected by possession of any other counterpart, each of which will be deemed a duplicate original or copy for such purposes. 2. This Agreement cannot be canceled by you for any reason, even if the Equipment fails or is damaged and it is not your fault. WE MAKE NO (AND HEREBY DISCLAIM ANY AND ALL) EXPRESS OR IMPLIED WARRANTIES OF ANY KIND WITH RESPECT TO THE EQUIPMENT, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. YOU MAY NOT PREPAY ALL OR ANY AMOUNT DUE HEREUNDER. You alone selected the Supplier and the Equipment. You asked us to buy it. We are not an agent of the Supplier. The Supplier is not allowed to waive or modify any term of this Agreement. The Supplier (as defined in Article 2A of the UCC) may have provided warranties for the acquisition of the Equipment. You may contact the Supplier to get a statement of those warranties from the Supplier. You will settle any dispute regarding the Equipment's performance directly with the Supplier. If any portion of the Equipment is software, you acknowledge that we do not own the software and we have no responsibilities as to it. You assign to us as security any rights you may have under any license but we assume none of your obligations. Any software that is part of the Equipment will be licensed to you by the owner with no reduction in Payment. 3. You are responsible for all servicing of the Equipment. You will at your expense, use, maintain and keep the Equipment: (a) in good operating order in the manner for which it was designed and intended; (b) SOLELY FOR YOUR BUSINESS PURPOSE and not for farming, consumer, personal, family or household purposes; (c) in accordance with Supplier recommendations; and (d) in compliance with all applicable laws, regulations and insurance requirements. We or our agents may inspect the Equipment wherever located or used (and all records operating documentation) at your cost and expense. You will at all times maintain the highest possible value and utility of such Equipment, allowing it to be used for its original intended purpose. You will not modify or alter any Equipment without our prior written consent excepting regular maintenance. Ownership of all attachments, additions or replacements is automatically transferred to us. You will keep and use the Equipment only at the above location and will not remove the Equipment from such location or return it to us without our written consent; provided, that if the Equipment is a motor vehicle or trailer, it may be moved within the continental United States so long as it returns to its designated location regularly. You will keep the Equipment free and clear of any and all liens, encumbrances, mortgages, security interests, pledges, charges or claims ("Liens") and will promptly, at your sole cost and expense, take such action as may be necessary or appropriate to discharge any such Lien except the respective rights of you and us under this Agreement. You bear the risk of loss of the Equipment and will promptly notify us in writing of any loss or damage to the Equipment. If we determine that any part of the Equipment is lost, stolen, destroyed or damaged, you will, at our option, (a) replace the same with like equipment in good repair, acceptable to us, (b) place the Equipment in good working order so that the Equipment is of the same value, utility and marketability or (c) pay to us in cash the Casualty Value. As used herein, "Casualty Value" means the sum of (i) any accrued and unpaid Payments or other amounts due; plus (ii) the sum of all Payments due in the future, discounted to present value at three percent (3%) per annum; plus (iii) a make-whole Payment or any other amounts we reasonably determine is necessary for us to realize the benefit of our bargain. We may require that you perform option (c) whether all or only a portion of the Equipment experiences subject to the loss or damage. Upon our receipt of Payment as set forth in this Section, you will be entitled to release of our security interest in the Equipment, without representation or warranty.
4. If you are required to deliver to us the Equipment you will immediately deliver the Equipment to us in the same condition as when delivered capable of performing all functions, ordinary wear and tear expected at such location within the United States as we may instruct. You will pay all transportation and other expenses related to delivery, including disassembly, packing and such actions as is necessary to qualify the Equipment for all Supplier's (or other authorized service representative's) then available service contract or warranty and all applicable licenses or permits.
5. It will be an "Event of Default" or "Default" if: you do not pay us as agreed when any amounts are due; fail to perform any other term of this Agreement; you sell, attempt to sell, transfer, assign, lease, rent or otherwise transfer possession or grant any rights, title or interests in any item of Equipment or this Agreement to anyone, unless we consent in a signed writing; you or any guarantor of your obligations dies, becomes insolvent, files for or is the subject of a proceeding in bankruptcy, reorganization or any similar law or breaches or repudiates this Agreement or the guaranty; your primary business, ownership or management changes; or you default under any lease or other contracts with us or any other persons; suffer a significant

EFA | Quick Doc | I-Rent Advance EC | v1.0 3/22/2022 | SF#9944                                    Page 2 of 6

Exhibit A - Page 1 of 8

DocuSign Envelope ID: 38379C63-C834-4291-AF3C-D54BACEF91CD

SOLE ORIGINAL

adverse change in your business or financial condition or otherwise give us good reason to believe you will be unable to perform this Agreement. You agree that if an Event of Default has occurred, we may, in our sole discretion, do any or all of the following, each of which will be construed as cumulative, and no one of them as exclusive of the others: (a) proceed by appropriate court action or actions; (b) recover interest on any unpaid Payment from the date it was due until fully paid at the rate of the lesser of eighteen percent (18%) per annum or the highest rate permitted by law; (c) without further notice to you, cancel this Agreement whereupon you will deliver possession of the Equipment to us and you will remain liable as herein provided; (d) whether or not this Agreement is cancelled, disable or take possession of any or all of the Equipment wherever situated and enter upon any premises without liability for so doing; (e) sell or lease the Equipment in a commercially reasonable manner; (f) declare immediately due and payable, as liquidated damages for loss of bargain and not as a penalty (i)all accrued and unpaid Payments and other accrued obligations hereunder, (ii) the sum of all unpaid Payments for the remaining Term, discounted to present value at three percent (3.0%) per annum and any other sum necessary so we may realize the benefit of our bargain (said accelerated amount will bear interest at a rate equal to eighteen percent (18%) per annum); and (g) exercise any other right, remedy, election or recourse provided for in this Agreement or which is available to us in law or equity. You acknowledge that an Event of Default hereunder will constitute an Event of Default under any other lease, loan or other agreement with us. **6.** This is a financing and not a lease. You own the Equipment, subject to our security interest. You hereby grant us a security interest in the Equipment and all proceeds arising therefrom, which you represent to be a valid first priority purchase money security interest. If any portion of the Payments or other payments hereunder will be deemed interest and such interest exceeds the highest rate permitted by applicable law, such excess interest will be applied to your obligations to us or refunded if no obligations remain. You grant us authority to file UCC financing statements as we deem necessary to protect our interest, and we may charge you a fee to cover documentation and other costs. **7.** You will promptly pay and remit to the appropriate authorities, or if we so specify reimburse you for, , all taxes., governmental charges ("Taxes") relating to the leasing, ownership, purchase or use of the Equipment, including licensing and registration fees, penalties and interest. You will properly file all reports and pay all Taxes and furnish us with evidence of compliance herewith. You will pay upon billing a fee for administration of this Agreement which may be in excess of actual costs we incur and you will be responsible for maintaining registration of the Equipment and obtaining certificates of title or ownership satisfactory to us, which you will promptly deliver to us. **8.** By providing us with a telephone number for a cellular phone or other wireless device, including a number that you later convert to a cellular number, you are expressly consenting to receiving communications, including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system, from us and our affiliates and agents at that number. This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls for non-marketing purposes. Calls and messages may incur access fees from your cellular provider. You agree that any call between You and Us or Our agents and employees may be recorded or monitored. **9.** You will: (a) keep the Equipment insured against all risks (physical damage insurance) in amounts specified by us from time-to-time but in no event less than the greater of replacement value (special form replacement insurance) or the total of all Payments under this Agreement; and (b) at all times carry commercial liability insurance in amounts satisfactory to us but in no event less than $1,000,000.00. All insurance will be in form and with insurance companies satisfactory to us and we and our successors and/or assigns will be named lender loss payee and additional insured on all such insurance policies. All such insurance policies will provide for the giving of thirty (30) days notice to us prior to any alteration or cancellation thereof and will be in full force and effect from the time of shipment. You hereby appoint us as your attorney in fact to make claim for, receive Payment of, and do all acts necessary to collect the proceeds of such insurance. You will provide us with acceptable certificates or other evidence of insurance that we request. If you fail to maintain such insurance, or fail to provide us with evidence of such insurance, we may, but are not obligated to, obtain insurance in such forms and amounts as we deem reasonable to protect our interests and we may make a profit on the provision of any such insurance. You agree that we are not a seller of insurance or in the insurance business. Any insurance proceeds received by us will be applied, at our sole and absolute discretion, to one of the options contemplated in Section 4. **10.** You may not sell, transfer, assign, lease, rent or otherwise transfer possession of any Equipment or any rights, title or interests in the Equipment or this Agreement to anyone, without our prior written consent. We may sell or transfer our interests to another person ("Assignee"), who will then have all of our rights but none of our obligations. You will pay our Assignee all Payments and other amounts due hereunder without any defense, rights of offset or counterclaims, which will or could be asserted against such Assignee. You waive all defenses against such Assignee and will not hold or attempt to hold such Assignee liable for any of Lender's obligations. **11.** You will defend, indemnify and hold us (and our officers, employees, agents, and any successors and assigns) harmless from and against: all claims, demands, suits and legal proceedings arising out of or related to this Agreement or any Equipment, including attorneys' fees and costs. **12.** You warrant that neither you nor any other person who owns a controlling interest or otherwise controls you in any manner is not listed on the Specially Designated Nationals and Blocked Persons Lists maintained by the Office of Foreign Assets Control ("OFAC") or other similar lists maintained by the federal government; If any provision of this Agreement is invalid, the remainder of this Agreement will remain in effect. <u>If requested by us</u>, you will deliver to us financial statements periodically and at any time. **13.** This Agreement and all documents executed in connection with this Agreement will be governed by the laws of the state of Oregon. Any action or proceeding regarding this Agreement, the Equipment or any cause of action whatsoever arising from or related hereto will be maintained in the state or federal courts in Portland, Oregon, and you hereby submit to jurisdiction and venue, waiving any claim of improper jurisdiction or venue or forum non conveniens, agreeing to accept service at your place of business in any such action. TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY TO THIS AGREEMENT HEREBY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION ARISING HEREUNDER OR IN ANY WAY CONNECTED WITH THIS AGREEMENT OR THE EQUIPMENT. You will pay our attorney's fees if we use an attorney to enforce our rights. Any notices required or permitted hereunder will be sent in writing to us or to you at the addresses set forth on the first page of this Agreement or to any other address as may be specified by a party by a notice given as provided herein and will be sent by certified mail (return receipt requested), by a nationally recognized express courier service (such as Federal Express) or personally served. The discount rate used herein includes a prepayment premium applicable to prepayments required by us. You may not assign this Agreement, it is binding on your heirs, successors and assigns. You have had an opportunity to review this Agreement with counsel of your choice and it will not be interpreted against us because we drafted it. This Agreement contains the entire agreement of the parties (THERE ARE NO ORAL AGREEMENTS REGARDING THE EQUIPMENT) and may be not supplemented, or amended except in a writing signed by the party agreeing to such change. YOU MAY HAVE A COPY OF THIS AGREEMENT IN LARGER TYPE IF YOU REQUEST IN WRITING BEFORE SIGNING.

IN WITNESS WHEREOF, the parties have caused this Equipment Finance Agreement to be executed by their duly authorized representatives.

| LENDER: DEXT CAPITAL, LLC | BORROWER: METATRON HEALTH LLC |
|---|---|
| SIGNATURE: [signature] DATE: JUN 29 2022 | SIGNATURE: ROBERTA HUANG (DocuSigned) DATE: 5/25/2022 |
| PRINT NAME & TITLE: Eric Gross  Chief Operating Officer | PRINT NAME & TITLE: ROBERTA HUANG  MANAGING MEMBER |

**UNLIMITED GUARANTEE:** To induce Dext Capital LLC, its successors and assigns, (the "Lender") to enter into the above Agreement, which is incorporated herein by reference. Guarantor, jointly and severally if more than one (singular reference may be deemed plural for enforcement and interpretation), guarantees to Lender full and prompt payment and performance when due of all obligations of the Borrower under the Agreement. capitalized terms not defined in this Guaranty have the Agreement meaning. Guarantor shall pay to Lender immediately upon demand the full amount of all installments, payments, advances, charges, costs and expenses, including reasonable attorneys' fees due to Lender. This Guaranty is non-assignable by Guarantor and is a guaranty of performance and payment and not collection; Guarantors' liability shall be primary, direct, absolute and unconditional. and Lender will not be required to proceed against Borrower, Equipment, any security, or enforce any other right, before proceeding against Guarantor which is in addition to, and unaffected by, any other obligation or guaranty. Guarantor obligations will not be affected by any bankruptcy, insolvency, liquidation or dissolution, will not be discharged by incapacity or death (your obligations being binding on heirs, executors, administrators) and waives any defenses of a surety or statute of limitations affecting Guarantor's liability or enforcement. Guarantor authorizes Lender, without notice to or demand on Guarantor, and without affecting Guarantor's liability hereunder (waiving any defense or claim), to take any action Lender deems appropriate in its sole and absolute discretion including extensions, modifications, renewals or waivers granted Borrower or release and/or compromise any obligations of any party or security without releasing Guarantor's liability. Guarantor's liability shall be reinstated and revived if, for any reason, any guaranteed indebtedness paid is in any way rescinded, avoided or must otherwise be restored by Lessor, whether due to bankruptcy, reorganization or otherwise, as though not paid. Guarantor shall have no right of subrogation and Guarantor waives any right to enforce any remedy, or any right to participate in any security, until Lender is fully paid under the Agreement. Guarantor warrants that neither Guarantor nor, if an entity, any other person who owns a controlling interest or otherwise controls such entity in any manner is not listed on the Specially Designated Nationals and Blocked Persons Lists maintained by the Office of Foreign Assets Control ("OFAC") or other similar lists maintained by the U.S. federal government. Lender may without notice assign this Guaranty in whole or in part. Guarantor authorize Borrower to obtain credit bureau reports, make credit inquiries and agrees, on request, to provide Lessor with Guarantors financial statements, tax returns and any information necessary for Lender to comply with applicable law. Lender makes no representation to Guarantor including creditworthiness of the Borrower. All rights, powers and remedies of Lender hereunder are cumulative. If an entity, Guarantor warrants the execution, delivery and performance of this Guaranty has been duly authorized and will not violate any of Guarantor's governing documents; and the person signing this Guaranty is duly authorized. **This Guaranty shall be governed by and construed in accordance with the laws of the State of Oregon, applied without giving effect to conflict-of-laws principles. Guarantor irrevocably submit to the jurisdiction of any State or Federal**

EFA | Quick Doc | I-Rent Advance EC | v1.0 3/22/2022 | SF# 9944    Page 3 of 6

Exhibit A - Page 2 of 8

DocuSign Envelope ID: 38379C63-C834-4291-AF3C-D54BACEF91CD

court located in Portland, Oregon. The parties irrevocably waive any right to a jury trial relating to this Guaranty, the Agreement or any other instrument, Guarantor agrees that Lender may file this Guaranty with any court as evidence of the knowing, voluntary and bargained agreement of Guarantor to irrevocably waive trial by jury, and that any controversy whatsoever shall instead be tried in a court of competent jurisdiction by a judge sitting without a jury.

| PERSONAL GUARANTOR 1 NAME: | | | Attach Copy of Driver's License: |
|---|---|---|---|
| SIGNATURE: *ROBERTA HUANG* (DocuSigned by ROBERTA HUANG, 3C2B5361E407415) | DATE: 5/25/2022 | PRINT NAME: ROBERTA HUANG | , An Individual |
| PERSONAL GUARANTOR 2 NAME: | | | Attach Copy of Driver's License: |
| SIGNATURE: | DATE: | PRINT NAME: | , An Individual |
| PERSONAL GUARANTOR 3 NAME: | | | Attach Copy of Driver's License: |
| SIGNATURE: | DATE: | PRINT NAME: | , An Individual |
| PERSONAL GUARANTOR 4 NAME: | | | Attach Copy of Driver's License: |
| SIGNATURE: | DATE: | PRINT NAME: | , An Individual |

DocuSign Envelope ID: 38379C63-C834-4291-AF3C-D54BACEF91CD



**Early Commencement Agreement**

Equipment Finance Agreement ████8-001    dated 5/25/2022

**LENDER:**
Dext Capital, LLC, 4000 Kruse Way Place, Building 3 Suite 100, Lake Oswego, OR 97035

**BORROWER:**
METATRON HEALTH LLC

As an inducement to Dext Capital, LLC ("Lender") and/or its assigns to advance certain funds, which are required terms established by the supplier(s) of the financed equipment (the Supplier(s)), and as instructed by Borrower to Lender, Borrower agrees to the following terms and conditions.

This is in reference to EFA ████8-001    dated 5/25/2022    between Dext Capital, LLC (Lender) and METATRON HEALTH LLC    (Borrower).

The Supplier(s), who was selected solely by the Borrower, requires advance payment prior to delivery and installation of the equipment. Borrower hereby acknowledges that (i) **these are terms negotiated between the Borrower and the Supplier(s)**, and (ii) **Neither Dext Capital, LLC nor its assigns have acted as an agent of either the Supplier(s) or the Borrower.**

Borrower hereby authorizes and directs Dext Capital, LLC to release up to 249999.00    (the "Purchase Funds") to the Supplier(s) in order to facilitate and expedite the delivery of the equipment. The Borrower will notify Dext Capital, LLC promptly following the delivery and installation of the equipment.

The Borrower hereby authorizes Dext Capital, LLC to make the effective date of the EFA the date of this agreement. The Borrower agrees that despite the fact that the equipment to be financed has not yet been delivered and installed, this agreement authorizes Dext Capital, LLC to commence the terms of the EFA and gives rise to all of Debtor's obligations under the EFA, including, without limitation, the duty to make monthly payments commencing immediately as invoiced by Dext Capital, LLC. Borrower agrees that it has an obligation to make all scheduled payments under the EFA, and Borrower's obligations thereunder are non-cancellable as of the date of Dext Capital, LLC's payment of the Purchase Funds to the Supplier(s). Borrower acknowledges these obligations despite: (i) any failure of the Supplier(s) to deliver all or any part of the equipment, (ii) any failure of the equipment to meet Borrower's specifications or functionality, (iii) any other problem whatsoever regarding the equipment, the delivery, the installation of the equipment or the Supplier.

This agreement supersedes and overrides all other oral or written statements regarding the early commencement of the EFA. All terms, obligations, and rights afforded the Lender and its assigns under the EFA that are not inconsistent with the provisions of this agreement shall continue to apply.

**BORROWER:** METATRON HEALTH LLC

**SIGNATURE:** 
DocuSigned by: ROBERTA HUANG
3C2B5361E407415...

**PRINT NAME & TITLE:** ROBERTA HUANG
MANAGING MEMBER

**DATE:** 5/25/2022



# Exhibit A

| Equipment Finance Agreement ▇▇▇▇8-001 dated May 25, 2022 |
|---|
| **LENDER:** |
| Dext Capital, LLC, 4000 Kruse Way Place, Building 3 Suite 100, Lake Oswego, OR 97035 |
| **BORROWER:** |
| METATRON HEALTH LLC, 6464 Southwest Borland Road, STE 3, Tualatin, OR 97062 |

This Exhibit A is attached to and becomes part of the Equipment Finance Agreement identified above between Lender and Borrower.

Equipment Location: 6464 Southwest Borland Road

STE 3, Tualatin, OR 97062

Equipment Description: Sciton equipment as listed on Sciton invoice s10139 dated 6/2/2022 with any and all attachments and accessories thereto.

| QTY | Description |
|---|---|
| 1 | JOULE™ X Multi-Laser Wavelength Modular Platform, 220 VAC, 30 A |
| 1 | Halo™ Banner Stand |
|   | Sciton Success Builder Level for this Sale- Flex Program [All Success Builder Benefits EXPIRE 1 year from date of shipment] |
| 3 | Laser Protective Eyewear |
| 1 | ARM - Broadband Articulated Delivery Arm - not for fiber accessory use |
| 1 | Collimated handpiece: 2mm for 2940 nm and 3mm for 755 nm |
| 1 | Collimated handpiece: 4mm for 2940 nm and 6mm for 755 nm and 1319 nm |
| 1 | Single 1064 nm Module: Nd:YAG Laser |
| 1 | Single 1470 nm Module: High Power Diode Laser - Arm delivered |
| 1 | First Er: YAG Laser Module: 2940 nm - Arm Delivered, handpieces and scanners separate |
| 1 | BBL™ broadband pulsed light platform module |
| 1 | SkinTyte -II ™ Module - requires separate BBL Module, includes ShotSmart™ BBL handpiece |
| 1 | HERO™ High Enery Rapid Output |
| 1 | 420 Forever Clear™ blue filter |
| 1 | 515, 560, 590, 640 Forever Young™ static skin rejuvenation option |
| 1 | 590, 640, 695 Static and ForEver Bare™ motion hair removal options (requires ShotSmart™ BBL handpiece |
| 1 | 15x15mm square Finesse Adapter (Small SmoothEdge must be purchased separately) |
| 1 | 11mm round Finesse Adapter |
| 1 | 7mm round Finesse Adapter |
| 1 | Large SmoothEdge Adapter (45x15mm) |
| 1 | Small SmoothEdge Adapter (15x15mm square adapter must be purchased separately) |
| 3 | BBL Safety Glasses (3 pairs included with BBL) |
| 1 | BBLink Autosync Goggles |

EFA-Exhibit A v.10/1/20 [9944 5/31/2022 3:21:35 PM]                Page 1 of 2

Exhibit A - Page 5 of 8

| | |
|---|---|
| 1 | Halo™ Module II-(200µ-700µ spot)-1470 hd required, incl. 1 Vortex™ Adapter for Installation |
| 50 | Additional Halo Vortex™ Adapters purchased with system ($99 each) |
| 1 | ClearSilk™ PhotoRejuvenation Module: 1064 nm Arm Delivered, (arm and 1064 module sold separately) |
| 1 | Zimmer - Cryo 6 with hose (2 year Manufacturer's warranty) |
| 1 | Buffalo Smoke Evacuator (third party manufacturer's warranty) |
| 36 | Months Warranty on Sciton Manufactured System Components<br>3rd party items carry original manufacturer's warranty |

# EXTENSION AGREEMENT

**DEXT CAPITAL, LLC**

Re: Account #  ▮▮▮▮▮▮8-001

The Buyer/Lessee/Transferee/Debtor or maker or obligor (hereinafter deferred to as the "Obligor") hereby acknowledges that it is obligated to Dext Capital, LLC (a Delaware limited liability company) ("Dext") under a Conditional Sale Contract Note/Lease/Equipment Lease Agreement/Promissory Note-Security Agreement/Security Agreement/Transfer and Assumption Agreement or other contract, agreement, instrument and/or a note or notes issued in connection therewith (hereinafter, together with all agreements related thereto, called the "Contract"). The Obligor acknowledges that it has requested that Dext reschedule, restructure and/or extend its payment obligations under the Contract and that DEXT has agreed to forebear from exercising any rights or remedies it has and modify the Contract on the terms and conditions set forth herein. The Obligor acknowledges that, as of the 14th day of August, 2024 (the "Extension Computation Date"), the aggregate amounts of rental or payment installments shown in Item (1) herein together with and the charges shown in Items (2), (3) and (4) herein shall be paid upon execution of this Extension Agreement. The term of the Contract shall be extended for three consecutive monthly periods and during that time the Obligor shall pay the amount shown below and thereafter the remaining obligations of the Contract shall be paid in accordance with any attached schedule 1, and if none, in 17 consecutive monthly installments with the first installment being due and payable on the 25th day of August, 2024 and subsequent installments on the same day of each succeeding month thereafter until paid, as follows:

| | | |
|---|---|---|
| (1) Due and Unpaid Installments: | $0 | |
| (2) Due and Unpaid Delinquency Interest or Late Charge: | $0 | |
| (3) Due and Unpaid Taxes and other charges: | $0 | |
| Itemized Extension Charges: | | |
| (a) Documentary or Official Fees | $0 | |
| (b) Extension Fee: | $0 | |
| (4) Total Itemized Extension Charges (a+b) | $0 | |
| (5) Total Unextended Obligations (1+2+3+4) | $0 | |

16   installment(s) each in the amount of $11,500.00 ; then 1   installment(s) each in the amount of $9,091.42 ;

In order to induce Dext to agree to the foregoing rescheduling, restructure and/or extension, and in consideration of Dext so doing, the Obligor warrants that the Contract is a is a valid, binding and existing obligation of the Obligor, payable without any defense, counterclaim or offset whatsoever, and promises and agrees to pay the Contract to Dext's order according to the terms set forth above, and of the Contract to the extent not modified herein, at any office of Dext Capital, LLC or such other place of payment Dext may designate, and in the event of a default in the payment of any amount when due or default on any of our obligations under the Contract or any other obligations to DEXT, the entire unpaid obligations shall, at Dext's option, to the extent permitted by applicable law, immediately become due and payable and Dext may enforce its rights and remedies under the Contract. Obligors hereby stipulate, agree, represent and warrant that Dext owns the equipment described in the Contract or has a valid, duly authorized and properly perfected security interests in all of the equipment or collateral described in the Contract and that such security interest(s) are enforceable in accordance with their terms, without offset, reduction or defense of any kind or nature, and that the Obligors have the interests in and to the collateral described therein (the "Contract Collateral") as they purport to have and secures the Obligations under the Contract and in this Agreement. **In addition, the Obligor grants a security interest in any equipment identified in the Schedule "A" attached hereto, if any, and in any and any and all documents, instruments, chattel paper (both tangible and electronic), goods, general intangibles, payment intangibles, investment property, inventory, machinery, contract rights, equipment, motor vehicles, fixtures, accounts and all property in which the Obligor now or hereafter has any right or interest (all of the foregoing, together with all accessories, attachments, replacements, substitutions and accessions thereto, and all proceeds (both cash and noncash), products, revenues and rents therefrom wherever located including but not limited to any indemnity, claim payments or proceeds relating to any insurance thereon, collectively called "Additional Collateral"; the Contract Collateral and the Additional Collateral, if any, is hereafter referred to as the "Collateral")** and agrees that said security interest secures the payment, performance and fulfillment of all obligations of the Obligor to Dext or any affiliate of Dext, whether such obligations are now existing or hereafter incurred or arising, are contingent or non-contingent, are direct or indirect, arise by assignment or otherwise or are contemplated or not contemplated as of the date of this Extension Agreement. Past due interest will be due and payable on any amount from and after maturity whether by acceleration or otherwise, at the rate of 18% per annum calculated daily but not to exceed any maximum permitted by law. If so requested, Obligor will pay in advance any personal property tax as estimated by Dext, pro-rated on a monthly basis. Obligor will pay when due all charges and taxes (local, state and federal) which may now or hereinafter be imposed upon the ownership, leasing, renting, sale, purchase, possession or use of the Collateral. Upon request of Dext, Obligors agree, within ten (10) days of such request, to (i) execute any additional documents and perform all acts not specifically referred to in the Agreement which are or may become reasonably necessary to fully effectuate the intent of this Agreement and (ii) re-execute any documents signed relating to the Contract that was incorrectly drafted and signed at the closing of loan associated with the Contract. Dext are hereby authorized sign on our behalf and to file, register, record or publish or re-file, re-register, re-record or republish one or more financing statements or a reproduction hereof as a financing statement.

The Obligor further acknowledges and warrants that legal title to or a first lien upon the Collateral is and shall continue to be vested in Dext, its successors and assigns, until the Obligor has paid in full, and has performed all of its obligations to Dext, with interest, whether under the Contract, this Extension Agreement or otherwise. The Obligor hereby irrevocably and unconditionally releases and forever discharges Dext and its officers, directors, employees, agents, successors and assigns (the "Releasees") from all manner of action, causes of action, suits, debts, liabilities, costs, claims, accountings, and demands in law and in equity which the Obligor may now have or might otherwise be entitled to make, pursuant to, arising from or in connection with the Contract, this Extension Agreement or related writings and in connection with any steps taken by Dext to date in the enforcement of its rights and remedies against the Obligor, the Collateral as well as other property and assets of the Obligor. Unless specifically provided in this Agreement, this Agreement and any past or present acts or omissions taken or foregone or payments made or to be made shall not be deemed to constitute, in any way, constitute a waiver, release, discharge or satisfaction, of or concerning any or all rights, interests, defenses, offsets, claims of any kind or nature of (or any indebtedness owed to) the Dext, and any and all such rights, interests, defenses, offsets, claims are hereby expressly reserved and preserved. The Obligors hereby stipulate and agree to assume the risk of any and all unknown, unanticipated or misunderstood claims which are released by this Agreement in favor of the Releasees. To the maximum extent permitted by law, the Obligors, jointly and severally hereby stipulate and agree to defend, indemnify, protect, exonerate and hold Releasees harmless from and against any and all loss, cost, damage, liability, expense or claims which Releasees, or any one of them, may suffer or incur, or be subject to, as a direct or indirect result or consequence of or in relation to the Contract or this Agreement or any claim by anyone that the Dext is directly, indirectly or derivatively liable for any act, omission or liability of any Obligor; this indemnity shall be secured by any and all liens created under and pursuant to the Contract and shall survive termination, release or discharge of the Obligors, or any one of them. Nothing herein shall constitute a release or modification of any rights of the Dext against any person or entity not a party to this Agreement. The Dext hereby maintains and preserves all of its rights against such other parties. This Extension Agreement together with any note or notes delivered to Dext pursuant hereto, shall be deemed only evidence of Obligor's obligations under the Contract and not satisfaction thereof until such obligations are collected by Dext in full. Any provision of this Extension Agreement which is unenforceable shall not affect the enforceability of the remaining provisions hereof; any violative provision shall be deemed amended to conform to such law, statute or ordinance without invalidating any other terms and provisions of this Extension Agreement or Contract. This Extension Agreement shall comply with applicable usury laws and as such; any excess interest shall be credited against any other amounts owing under this Agreement (or, if this Agreement shall have been fully performed, refunded); further, all calculations of the rate of interest contracted for, charged or received under this Extension Agreement or the Contract for the purposes of determining whether such rate exceeds the maximum amounts of interest allowed by applicable law, shall be made, to the extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated extended term, all interest at any time contracted for, charged or received from the Obligor or otherwise by us in connection with this Extension Agreement or the Contract. This Extension Agreement may be executed in counterparts all of which will constitute one agreement. The exchange of signed copies by facsimile or electronic transmission (including but not limited to .pdf, .jpg, .gif, .png files) will constitute effective execution and may be used in lieu of manually signed documents and qualify as authentic original signatures for purposes of enforcement thereof, including all matters of evidence and the "best evidence" rule. For purposes of perfection of a security interest in chattel paper under the UCC, only the counterpart of this Extension Agreement that bears our manually applied signature and is marked "Sole Original" by us will constitute the sole original counterpart of the original chattel paper for purposes of possession. No security interest in this Extension Agreement can be perfected by possession of any other counterpart, each of which will be deemed a duplicate original or copy for such purposes. For purposes of perfecting a security interest in chattel paper by possession, only the counterpart of this Extension Agreement

EXT-GEN-BLNKT(03/20)

Exhibit A - Page 7 of 8

Page 1 of 2

that bears Dext's manually-applied "wet ink" signature and is marked "Original" by Dext constitutes chattel paper. No security interest may be perfected except through control of such manually-executed copy.  Dext's acceptance hereof shall in no manner prejudice Dext's rights or alter Dext's position under the Contract. **As part of the consideration for Dext's acceptance hereof, Dext and the Obligor hereby: (a) agrees to the EXCLUSIVE VENUE AND JURISDICTION OF STATE AND FEDERAL COURT LOCATED WITHIN THE STATE OF OREGON** for all actions, proceedings, claims, counterclaims or cross-claims arising directly or indirectly in connection with, out of, or in any way related to this Extension Agreement, the Contract, whether based in contract or in tort or at law or in equity, with the sole exceptions that an action to recover possession of all or part of the Collateral or any other assets of the Obligor, however denominated and equitable proceedings to enforce the terms of this Extension Agreement or the Contract , may, in Dext's sole discretion (or that of Dext's successors, assigns or affiliates), be brought in a state or federal court having jurisdiction over the Collateral, and/or such other assets, and that judgments may be confessed, entered, or enforced in any jurisdiction where the Obligor or the Collateral and/or any other assets of the Obligor may be located; (b) waives any right the Obligor may have to transfer or change the venue of any litigation brought in accordance herewith; (c) knowingly, voluntarily and intentionally waives any and all right to a trial by jury in any action based hereon, or arising hereunder or under the contract, concerning any and all claims, defenses, counterclaims, cross-claims and setoff or recoupment claims arising either directly or indirectly between the parties and/or involving any person or entity claiming any rights acquired by, through or under any party and further waives any and all right to claim or recover any punitive or consequential damages or any damages other than, or in addition to actual damages and (d) To induce Dext to execute this Agreement, Obligor's each hereby agree that, in the event any of the Obligor's are the subject of any insolvency, bankruptcy, receivership, dissolution, reorganization or similar proceedings, whether federal or state, voluntary or involuntary, under any present or future law or act: (i) Dext shall be entitled to the immediate and absolute lifting of any automatic stay as to the enforcement of their remedies under this Agreement and the Contract, (ii) Obligor's consent to the immediate lifting of any such automatic stay, and will not contest or object to any motion filed by Dext to lift such stay, (iii) none of the Obligors will seek, or shall be entitled to, any extension of any period in the proceedings during which only such Obligors may propose a plan of reorganization or liquidation, including specifically, but not limited to, the period specified by Section 1121(b) of the United States Bankruptcy Code, as it may be amended from time to time hereafter and (iv) Obligors  agree that no injunctive relief against Dext shall be sought under Section 105 or any other provision of Title 11 of the U.S. Code, as amended.   The Obligor does hereby ratify and approve the obtaining by Dext of any credit report relating to the Obligor and hereby agrees that Dext may hereafter obtain such credit reports as Dext, in its sole discretion, may determine.  If for any reason any charge contracted for, charged or received  under this Extension Agreement or the Contract exceeds the maximum amount which may be contracted for, charged or received  under applicable law, the amount of such charge in excess of the maximum shall be spread over the remaining  term of this Extension Agreement and any such remaining excess  shall be applied to the reduction of this Extension Agreement, the Contract, or, to the extent permitted by law, to other obligations of the Obligor at the time owing to Dext, as Dext may determine, and any  excess remaining shall be void and shall be refunded to the Obligor.  Any provision hereof or of the Contract violative of applicable law shall not be effective for any purposes whatsoever but shall not affect any other provisions of said documents.  Intending that each and every provision of this Extension  Agreement be fully effective according to its terms, the parties agree that the validity, enforceability and effectiveness of each provision hereof and the obligations, rights and remedies of the parties in any way related to or arising under this Extension Agreement shall be governed by and construed in accordance with the laws of the State of Oregon.  Except as herein specifically modified, all of the terms, provisions and conditions of the Contract shall remain and continue in full force and effect in accordance with their original terms and conditions and shall continue to constitute the valid and binding agreements of the Obligor enforceable against the Obligor in accordance with their respective terms and conditions. This Extension Agreement, together with the Contract contain the entire agreement of the parties relating to this transaction and no agreements, representations or warranties except as contained herein and therein have been made, and we hereby expressly waive reliance on any representation except as may be made in writing therein and herein. This Extension Agreement and the Contract may not be amended except in a writing signed by Dext and the Obligor.  There are no oral agreements between the parties.  Obligors have read this Agreement, have had the opportunity to consult with independent legal counsel before executing this Agreement, have relied upon their  own judgment and that of any legal counsel and professional advisors in executing this Agreement, have not relied upon or been induce by an representation, statement or act by Dext or its legal counsel or professional advisors, and has entered into this Agreement voluntarily without coercion or duress and with full knowledge of the meaning and effect of such agreements and provisions.

| Account Number: | ███8-001 | METATRON HEALTH LLC |
|---|---|---|
| Dated: | | By: Roberta Huang, Managing Member |
| Witness or Attest: | | Social Security No. or Federal I.D. Number |
| Address: | | |

**Guarantor(s):**
Each of the undersigned, jointly and severally, hereby acknowledge the foregoing, consent to the extension, rescheduling and restructuring of the Contract, request that Dext consent to same and in consideration for such agree that any and all of Dext's rights under each guaranty or recourse obligation shall not thereby be diminished, altered or affected and shall continue for the term of the Contract as maybe modified herein.

| Dated: | | Roberta Huang, An Individual |
|---|---|---|
| Address: | | By: _____(Seal) |

**Accepted:**
Dext Capital, LLC
   By: _____

EXT-GEN-BLNKT(03/20)

Exhibit A - Page 8 of 8

Page 2 of 2